```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION


Robert Henry Mason,             :

         Plaintiff,             :    Case No. 2:14-cv-0410

    v.                          :    JUDGE GEORGE C. SMITH
                                     Magistrate Judge Kemp
Tony Ayres, et al.,             :

         Defendants.            :
```

REPORT AND RECOMMENDATION
AND ORDER

Plaintiff, Robert Henry Mason, an inmate currently housed at Pickaway Correctional Institution, has brought this action against several state employees in their individual and official capacities pursuant to 42 U.S.C. §1983. The heart of Mr. Mason's allegations are that Defendants denied him the appropriate amount of pain medication without cause in violation of his Eighth Amendment rights. Defendants have filed a motion to dismiss, which has been fully briefed. For the following reasons, it is recommended that the Court grant in part and deny in part Defendants' motion to dismiss (Doc. 8).

Mr. Mason has also filed a Motion to Appoint Counsel and Request for Order Calling Up Medical and Mental Health Records. Defendants have responded to that motion. For the following reasons that motion (Doc. 15) will be denied.

I. The Complaint

The following facts are all taken from Mr. Mason's complaint. Because Mr. Mason is without counsel, his complaint must be liberally construed. See Haines v. Kerner, 404 U.S. 519 (1972).

Mr. Mason alleged that at the time he was transferred to Pickaway Correctional Institution ("PCI") on or around February

28, 2011, he had HIV and had experienced a variety of severe complications due to HIV as well as other serious medical ailments.  He was housed in the Frazier Health Center at PCI, which was a unit of PCI that housed inmates with special needs.

One of Mr. Mason's ailments is chronic, severe HIV Peripheral Neuropathy.  Defendant Hale has treated this condition by ordering medications to relieve the nerve pain resulting from that condition, and he initially prescribed Mr. Mason 1200 mg Neurontin three times a day.  At some point, the "Ohio Department of Rehabilitation and Corrections decided that the level of Neurontin being provided to inmates was too high, and made the costly decision to cut the amount that was able to be provided to inmates. . . [this decision made] the new maximum allowable amount of 600mg[] three times a day."  (Doc. 3 at ¶111; see also ¶¶57-59).

On April 30, 2013, non-defendant employees of PCI alleged that Mr. Mason (who at that time had a prescription for 600 mg of Neurontin three times a day and 30 mg of Baclofen three times a day to manage his peripheral neuropathy) had a handful of 300 mg Neurontin pills and ingested an undetermined amount of those pills.  (Doc. 3 at ¶95.)  The assumption was that he had been "hoarding" his medication.  (Doc. 3 at PageID 229).  According to Mr. Mason, he was given a drug test that disproved the allegations that he had consumed more than the prescribed amount of Neurontin, but he was still admitted to the infirmary and placed on suicide watch.  (Doc. 3 at ¶¶ 96, 105).  In addition, as a result of the false allegations, Mr. Mason was denied pain medication.

The primary conduct that Mr. Mason complains of is the discontinuation of 600 mg of Neurontin three times a day and 30 mg of Baclofen three times a day, which occurred on May 1, 2013.  (Doc. 3 at ¶¶32, 39, 77, 98-100).  According to the Decision of

the Chief Inspector relating to one of Mr. Mason's grievances, which Mr. Mason attached to his complaint, on May 31, 2013, Defendants re-prescribed a pain medication (Ultram) that had been prescribed to Mr. Mason prior to March 1, 2011. (Doc. 3 PageID 253; see also ¶98). Defendants then prescribed Ultram again on June 7, 2013, July 11, 2013, July 25, 2013, August 8, 2013, September 13, 2013, and October 4, 2013. The final prescription was intended to last through December 2, 2013. (Id.) Mr. Mason alleges that on July 18, 2013, Dr. Rath re-prescribed 600 mg of Neurontin three times a day, but after a discussion with Dr. Hale, Dr. Rath discontinued his order the same day. (Doc. 3 at ¶109-110, 112, 116-117). The Decision of the Chief Inspector stated that Defendants re-prescribed Neurontin to Mr. Mason on July 19, 2013, August 3, 2013, and August 8, 2013, the last of which lasted through the date of the Decision, which was November 5, 2013. (Id.). The re-prescription of Neurontin was 300 mg, three times a day, which was half the dosage Mr. Mason had received prior to May 1, 2013. (Id.; see also doc. 3 at ¶¶ 77, 124; see also PageID 245). The contents of the Decision of the Chief Inspector regarding the prescriptions of Ultram and Neurontin are relied on by Defendants in their motion to dismiss as accurately setting forth the facts and have not been challenged by Mr. Mason in his response.

## II.  Standard

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009). Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring

the pleading of specific facts. Erickson v. Pardus, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure §1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, internal quotations and citations omitted). As stated by the First Circuit and cited approvingly by Scheid:

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id. (citing O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).  It is with these standards in mind that the motion to dismiss will be decided.

### III. Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998) (internal quotations and citations omitted).  A plaintiff seeking relief under § 1983 may bring a claim against a public official in the official's individual or official capacity. Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law ." Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  In contrast, an official-capacity claim is "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Mr. Mason alleged both types of claims, but he has consented to dismissal of his official capacity claims and the punitive damages he sought in connection with those claims.

Mr. Mason is correct that the Eleventh Amendment to the United States Constitution "bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." Grinter, 532 F.3d at 572 (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989); additional citations omitted). This immunity extends to claims against individuals sued in their official capacity to the extent that those claims seek monetary damages.  Barker v. Goodrich, 649 F.3d 428, 433 (6th Cir. 2011), reh'g denied (Sept. 12, 2011); see also McCormick v. Miami Univ.,

5

693 F.3d 654, 662 (6th Cir. 2012).  Ohio has not waived its sovereign immunity or consented to being sued in federal court.  See Mixon v. State of Ohio, 193 F.3d 389, 397 (6th Cir. 1999); see also Barker, 649 F.3d at 432 ("The burden of establishing Eleventh Amendment immunity lies with the state, and the defense is waived if it is not raised.") (citations omitted).  Furthermore, section 1983 has not abrogated that immunity.  See Campbell v. Hamilton Cnty., 23 F. App'x 318, 327 (6th Cir. 2001) (quoting Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).  Accordingly, because the claims at issue here are claims for monetary damages, claims against Defendants in their official capacities are barred by the Eleventh Amendment.  The Court will turn to Mr. Mason's claims against Defendants in their individual capacities.

                    A.    Defendants Ayers and Diley

Turning first to the allegations against Defendant Ayers and Dilley, Mr. Mason does not allege that either of those individuals prescribed him medications or discontinued his prescriptions.  Rather, he alleges that those individuals reviewed his grievances relating to his medication.  Specifically, Mr. Mason alleges that Defendant Dilley reviewed Mr. Mason's Informal Complaint Resolution submitted on May 16, 2013, which described the discontinuation of his pain medication on May 1, 2013 based on unfounded allegation that he consumed an unknown number of 300-mg pills of Neurontin.  He alleges that she considered the evidence, and on May 24, 2013, she provided a written response stating that when an inmate is caught "hoarding, cheeking, selling, etc." the inmate must not need the medication, and it is not a punishment to discontinue the medication.  (Doc. 3 at PageID 229).  He alleges that she relied on an allegation of misconduct that she knew to be false.  Mr. Mason alleges that Defendant Ayers reviewed Mr. Mason's Informal Complaint

6

Resolution submitted on July 28, 2013, which described the events of April 30, 2013 and May 1, 2013 involving the suspected overdose by Mr. Mason and subsequent blood test finding that he had not overdosed.  Defendant Ayers met with Mr. Mason and wrote a written response dated August 1, 2013.  During the meeting and in his written response, Defendant Ayers referred to disciplinary infractions in March of 2011 and September of 2012 as justification for stopping Mr. Mason's medication on May 1, 2013.  (Doc. 3 at PageID 256; see also ¶¶ 20-32.)  Defendants argue that these claims should be dismissed for failure to state a claim.

A mere denial of a grievance is not actionable under §1983 where that denial did not cause or contribute to the constitutional violation.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under §1983."  Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) (citations omitted); see also Argue v. Hofmeyer, 80 Fed. Appx. 427, 430 (6th Cir. 2003) (holding that the plaintiff failed to state a claim concerning the alleged interference with his ability to file grievances "because there is no inherent constitutional right to an effective prison grievance procedure").  The wrongful denial of a grievance "does not present a deprivation of any federal right, as there is no inherent constitutional right to an effective prison grievance procedure."  Keenan v. Marker, 23 F. App'x 405, 407 (6th Cir. 2001) (citations omitted).  Accordingly, while inmates who exhaust the prison grievance process without obtaining relief may seek relief in the district courts, see, e.g., Walker v. Michigan Dep't of Corr., 128 F. App'x 441, 446 (6th Cir. 2005), such relief would be for the underlying constitutional violation and not for the wrongful denial of the grievance.  Accordingly, Mr. Mason has failed to state a claim against Defendants Dilley and Ayers.

Mr. Mason's response to the motion to dismiss argues that Defendant Ayers, in particular, was responsible for more than merely denying a grievance.  Specifically, he argues that Defendant Ayers was instrumental and complicit because he was the supervisor of Dr. Hale, that upon receiving the grievance he refused to examine Mr. Mason or provide pain medication, and that his response to the grievance used language that indicated his role in the deprivation: "we did it and we'll do it again." (Doc. 13 at 19-20; see also Doc. 3 at ¶¶ 23 & 24).  However, allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of respondeat superior, are necessary in order to hold an individual defendant liable under § 1983.  Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Although there are other legal claims that can properly be asserted against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under 42 U.S.C. § 1983 cannot rest on such a claim.  Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted.  See also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  This rule holds true even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior.  See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under § 1983 for failing to respond to grievances which alert them of unconstitutional actions); see also Stewart v. Taft, 235 F. Supp. 2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under § 1983

cannot attach where the allegation of liability is based on a mere failure to act"). Here, there are no factual allegations demonstrating that Defendant Ayers participated or encouraged the total discontinuation of pain medication on May 1, 2013.

### B. Defendants Hale, Hall, Saul, and Rath

Mr. Mason's remaining claims are against Defendants Hale, Hall, Saul, and Rath, for depriving him of adequate pain medication in violation of the Eighth Amendment. These defendants argue that the claims against them should be dismissed for failure to state a claim.

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) cited in Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 895 (6th Cir. 2004). For an inmate to prevail on a claim that a prison official has violated his Eighth Amendment right to adequate medical care, he must both demonstrate that a deprivation that is objectively "sufficiently serious" and that the defendant prison official had a "sufficiently culpable state of mind," such that he or she showed "deliberate indifference" to the inmate's health and safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

A "sufficiently serious" deprivation (including lack of medical care) entails "incarcerat[ion] under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Such a risk must be one which society deems "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The alleged deprivation must cause an inmate more than "mere discomfort or inconvenience." Grant v. Taft, 2007 WL 1469403, *3 (S.D. Ohio

May 18, 2007). Indeed, to qualify as a "sufficiently serious" deprivation, the prison official's action or omission must result in the denial of "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. However, when relating to medical care, the Supreme Court has set forth the following guidance:

> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

Estelle v. Gamble, 429 U.S. 97, 103-05, 97 S.Ct. 285, 290-91, 50 L.Ed.2d 251 (1976) (footnotes and citations omitted) cited in Boretti v. Wiscomb, 930 F.2d 1150, 1153 (6th Cir. 1991).

In addition to demonstrating a "sufficiently serious" injury, an inmate must also provide evidence showing that a prison official had a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 302-03, 111 S.Ct. 2321, 115

L.Ed.2d 271 (1991).  Specifically, the Supreme Court has held that to be in violation of the Eighth Amendment, a prison official's culpability must rise to the level of deliberate indifference, "a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835.  To be found "deliberately indifferent," one must exhibit a "subjective recklessness."  Farmer, 511 U.S. at 839.  Deliberate indifference may be met through "sufficiently harmful" omissions.  Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Nonetheless, a prison official who is deliberately indifferent shows "more than [an] ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835 (citation omitted).

In addition to the above standards, the Court is mindful that the Court of Appeals distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. . . .  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted).  "A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim." Owens v. Hutchinson, 79 Fed.Appx. 159, 161 (6th Cir. 2003).

Mr. Mason's allegations against two of the remaining Defendants, Defendants Rath and Hall, rely completely on claims that they violated his Eighth Amendment rights by prescribing him an inadequate amount of pain medication.  These allegations include various reductions in the amount of pain medication

11

prescribed, as well as failures to increase the amount of pain medication from an inadequate level.

The only non-conclusory allegations against Dr. Rath were that he prescribed Mr. Mason 600 mg of Neurontin on July 18, 2013, and that he discontinued that prescription the same day. One of the attachments to Mr. Mason's complaint indicates that Mr. Mason was already being provided with some pain relief medication (Ultram) at that time, and that Defendants re-prescribed Neurontin at a reduced dosage the following day. Defendants pointed to the dates of those prescriptions as set forth in the attachment, and Mr. Mason has not challenged the truth of those dates.  Accordingly, Mr. Mason has alleged that Defendant Rath failed to add an additional pain medication to Mr. Mason's prescription.  While Mr. Mason alleges that the order that "took Plaintiff completely off his treatment/pain medications . . . was premeditated decided in collaboration of the Defendant's [sic] Hale and Rath," that allegation was conclusory and appears to relate to the July 18, 2013 prescription that was immediately cancelled.  (Doc. 3 at ¶¶84-85; see also Doc. 13 at 9).  There are no factual allegations linking Defendant Rath to the complete denial of pain medication to Mr. Mason following the incident on April 30.  Similarly, the allegations against Defendant Hall are that he failed to increase the 300-mg prescription of Neurontin that Drs. Hale and Saul had prescribed.

The allegations against Defendants Rath and Hall amount to allegations of inadequate medical treatment rather than denial of medical treatment, and do not include any factual allegations that demonstrate that they were acting with deliberate indifference.  The allegations against Defendants Rath and Hall fail to set forth a violation of the Eighth Amendment.

The remaining Defendants are Defendants Saul and Hale.  Mr.

12

Mason has alleged, among other allegations, that those Defendants caused Mr. Mason to suffer the complete deprivation of pain medication from May 1, 2013 to May 31, 2013 and that this violated his Eighth Amendment rights. "[A] prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (citing Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976) & Estelle, 429 U.S. at 103, 97 S.Ct. at 290). The deprivation of pain medication for even five days can rise to a violation of the Eighth Amendment under certain circumstances. Boretti v. Wiscomb, 930 F.2d 1150, 1154 (6th Cir. 1991) (finding that plaintiff adequately stated a claim for violation of the Eighth Amendment because he alleged that he suffered pain and mental anguish as a result of a five-day delay in providing medical treatment including changing the dressing of his wound and providing prescribed pain medication notwithstanding the fact that his wound never became infected).

  Here, Mr. Mason has alleged being in severe pain for at least 30 days as a result of the deprivation of pain medication. Mr. Mason alleges that he had been continuously prescribed pain medication (of various types and in varied amounts) to manage his peripheral neuropathy prior to April 30, 2013 and that the total deprivation of that pain medication occurred neither for any medical reason, nor for any other proper reason. He alleges that someone accused him of hoarding and taking too much medication, but that he was cleared from those allegations by a search and drug test within two days. These allegations set forth a claim that Defendants were deliberately indifferent in denying Mr. Mason pain medication and subjecting him to extreme pain for at least 30 days without cause in violation of the Eighth Amendment.

  Defendants argue that Mr. Mason does not clearly allege who

deprived him of his pain medication.  However, Mr. Mason identifies Defendant Saul as one of the individuals who "discontinued my treatment" following the incident on April 30, 2013 in both his allegations and in his Informal Complaint Resolution dated 5/16/13, which was attached to the complaint. (Doc. 3 at ¶89, PageID 229; see also PageID 233, 261).  This is accompanied by factual allegations that Dr. Saul acted as a treating physician and that, upon hearing the allegations that Mr. Mason had hoarded and ingested an undetermined amount of Neurontin on April 30, 2013, Dr. Saul placed Mr. Mason on constant watch, interviewed Mr. Mason, conferred with security, and wrote the order placing Mr. Mason on suicide watch.  (Doc. 3 at ¶¶ 89, 93).  Mr. Mason also identifies Defendant Hale as one of the individuals who discontinued his treatment following the April 30, 2013 incident.  He alleges that Dr. Hale is a physician and the Chief Medical Officer at Pickaway Correctional Institution, that he is the primary health provider for Mr. Mason and has ordered the treatment for all of Plaintiff's serious medical needs, and that he was the "drive behind the discontinue order that took Plaintiff completely off his treatment/pain medications."  (Doc. 3 at ¶¶ 3,46, 47, 84).  Mr. Mason's Informal Complaint Resolution dated 7/28/13, which was also attached to the complaint, also alleges that Dr. Hale discontinued his medication as a result of the incident on April 30, 2013.  (Doc. 3 at PageID 256).  Accordingly, there are sufficient factual allegations against Defendants Saul and Hale to set forth claims against them.

    Defendants also argue that it is not a violation of the Eighth Amendment to deny a prisoner pain medication when he has been found hoarding or abusing the medication.  However, taking the well-pleaded allegations of the complaint as true, by May 2, 2013, Mr. Mason had been cleared from allegations that he was

hoarding or abusing the medication on April 30, 2013, and yet Mr. Mason was deprived of pain medication for at least another 28 days. Furthermore, the stated reasons for the deprivation provided in response to Mr. Mason's grievances were misuses of medications in 2011 and 2012. Misuses of medication that occurred months or years prior cannot justify the sudden elimination of all pain medication on May 1, 2013. Accordingly, Defendants' argument assumes a factual scenario that is not before the Court at this time.

IV. <u>Motion to Appoint Counsel and Request for Order</u>

Mr. Mason has also filed a motion to appoint counsel and request for the Court to order production of copies of this medical and mental health records.

In prisoner litigation, counsel is appointed only in an exceptional case, and such appointment is not appropriate when the likelihood of the prisoner's success on the merits is highly dubious. <u>Willett v. Wells</u>, 469 F.Supp. 748 (E.D. Tenn. 1977), aff'd 595 F.2d 1227 (6th Cir. 1979). Such an exceptional case exists when "denial of proper representation would result in fundamental unfairness impinging upon the prisoner's due process rights...." <u>Childs v. Duckworth</u>, 705 F.2d 915 (7th Cir. 1983), <u>cited with approval in</u> <u>Mars v. Hanberry</u>, 752 F.2d 254 (6th Cir. 1985). In <u>Childs</u>, the Court identified the following factors to be considered: (1) whether the plaintiff's claim appears to be meritorious; (2) the plaintiff's ability to investigate the factual matters at issue; (3) whether the case is highly dependent upon effective cross-examination, such as where proper resolution depends upon determining which of several witnesses is being truthful; (4) whether the plaintiff appears capable of presenting the evidence in a coherent fashion; and (5) the complexity of the factual and legal issues presented.

Here, Mr. Mason asked that counsel be appointed for him.

15

Based on the current record, the Court cannot conclude that exceptional circumstances exist in this case that would warrant the appointment of counsel at this time. Regarding Mr. Mason's request for the Court to order production of copies of this medical and mental health records, Mr. Mason must first proceed according to the normal avenues of discovery which are set forth in the Rules of Civil Procedure. If Defendants do not provide relevant, discoverable materials in response to a proper request, Mr. Mason can seek relief from the Court in accordance with the Rules.

## V. Recommend Order

Based on the above discussion, it is recommended that Defendants' and the State of Ohio's Motion to Dismiss (#8) be granted in part and denied in part. It is recommended that the motion be granted as to Defendants Ayres, Rath, Hall, and Dilly. It is recommended that the motion be denied as to claims against Defendants Hale and Saul.

It is further ordered that Plaintiff's Motion to Appoint Counsel and Request for Order Calling Up Medical and Mental Health Records (Doc. 15) is denied without prejudice.

## VI. Procedure on Objections

### A. Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein,

may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

### B.  Order

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge